McFarland, J.,
delivered the opinion of the court.
On the 1st day of December, 1865, "Joseph S. Hill •& Co. and others, as creditors of J. W. Patterson & 'Co., filed their attachment bill in the • Chancery Court ■at Knoxville, Tennessee, under which an attachment was issued, and on the 1st day of January, 1866, levied by the Sheriff of Knox county, upon a stock of goods of said Patterson & Co. On the same day (1st day of January, 1866), the complainants obtained judgment *54 by confession against the said J. W. Patterson & Co. in the Circuit Court of the United States, then sitting at Knoxville, for $1,267.02 and costs. On the 8th day of the same month, a fieri faeias was issued upon this judgment, to the marshal, who visited the storehouse of J. W. Patterson & Co., for the purpose of levying the same upon the stock of goods mentioned, but found the same in the possession of the sheriff, under the aforesaid attachment from the State Court ; and the sheriff, advised by the counsel of the complainants in the attachment suits, refused to surrender the goods, and the marshal therefore returned his fi. fa. without levy. The goods were placed in the hands of a receiver appointed by the Chancery Court in the cause referred to, and sold and the proceeds held in custody of the court. On the 7th day of August,, 1866, this bill was filed by complainants to have satisfaction of their judgment out of the fund under the-control of the Chancery Court. The ground of this claim is, that the execution issued, on the judgment rendered in their favor in the United States Circuit Court, before referred to, bore test of the 1st day of the term at which it was rendered, to-wit: on the 4th Monday of November, 1865; that this execution held the personal goods of the defendants from the date of its test, and this related back to a period anterior to' the filing of the attachment bill, and was therefore a prior lien upon these goods. That having been prevented by the defendants and their agents from making this levy, they have the right in equity to enforce this lien and have satisfaction out of the proceeds. *55 It is well settled, in our State, an execution from a court of record relates to its test, and binds the debt- or’s goods in whosesoever hand they come, from the-time it is awarded. Peck v. Robinson, 3 Head, 438. -It is argued, that an execution issued and tested of the term at which the judgment was rendered, shall be considered as awarded on the day the judgment was' in fact rendered, and this execution will only bind the debtor’s goods from that day, while an execution tested of a term subsequent to the rendition of the judgment, shall be considered as awarded on the first day of said term, and therefore binds the debtor’s goods from that day.
Whether this distinction be sound, is a question that, for the present, we pass over. These questions are important, and in cases of conflicting rights and liens under executions from the courts of the same sovereignty, would necessarily determine the rights of the parties. But in this case, the question first arises, can the lien of the complainant’s execution, assuming it to relate to its test, 4th Monday of November, 1865, be enforced against the rights of the defendants, at whose instance the goods were, in point of fact, first seized by the sheriff, under process from the State court?
Is there any mode by which the question as to which is the superior lien, claimed under the process of the two different jurisdictions, can be determined and enforced? It will be readily seen that the question is widely different from cases where the conflicting liens are claimed under process from the same *56 jurisdiction; these, of course, the courts of that sovereignty may settle the conflict; but as between two different jurisdictions, is there any umpire?
This question has . been repeatedly before the Supreme Court of the United States, and as we understand has uniformly received the same determination. The case of Pulliam v. Osborne, 17 Howard, 471, (21 Custis’ Ed.), was an issue in the district court of 'the United States for the middle division of Alabama, to try the right of certain property, which was claimed by one party under authority of a levy and sale under •execution of a State court, by the other, by virtue, of an execution from the United States Court, which was supposed to bind the property from the time of its •delivery to the marshal, and was therefore a superior lien.
By the laws of that State, the lien of an execution commences from the delivery of the writ to the sheriff; and the same rule being applied to the Federal courts, the lien of the execution commenced upon its delivery to the marshal. In that case, it appears that the execution from the United States Court had been first delivered to the marshal, and at this time the defendant in the execution was the owner of the property; the levy was actually made by the marshal before the return of the process; but it further appeared that after the test of the execution from the Federal court, and after its delivery to the marshal, executions were issued from the State courts — under these executions the property was first seized and sold.
From this statement, it would have seemed clear, *57 according to the argument for the complainant in this case, that the execution from the Federal court was a superior lien upon the property. But the court said: <fhTo provision is made by the statutes of the State or of the United States, for the determination of priority between the creditors of the respective courts, State and Federal. They merely provide for the settlement of the priorities between the creditors prosecuting their claims in the same jurisdiction. The demands of the respective creditors in the present instance was reduced to judgments, and the officer of either court was invested with authority to seize the property. The liens were consequently co-ordinate or equal, and in such case the tribunal which first acquired possession of the property, by the seizure of its officers, may dispose of it so as to vest a title in the purchaser, discharged of the claims of ci-editors of the same grade.”
The question again arose in the case of Freeman v. Horne, 24 Howard, 450. In that case, White instituted in the Circuit Court of the United States, his suit against a Railroad- Company, under which the marshal attached cars and other property; thereupon Horne and others instituted their action of replevin in the State court against the marshal, taking the property out of his possession. The plaintiffs in the re-plevin suit claimed under a mortgage from the Railroad Company. This action of replevin was prosecuted to final judgment in favor of the plaintiffs in the Supreme Court of the State — holding that the lien of the mortgage was superior to the lien of the attachment, under which the marshal had seized the property. A *58 writ of error was sued out in the Supreme Court of the United States to reverse the judgment. Mr. Justice Nelson, delivering the opinion of the court, said: “The suit in this case has been instituted and carried on to judgment in the court below, under a misapprehension of the settled course of decision in this court in respect to the case of conflicting processes and authority between the Federal and State courts, and also in respect to the appropriate remedy of the plaintiffs for the grievances complained of.” The rule is then stated to be: “That in case of conflicting authority under State and Federal process, and in order to avoid unseemly collision between them, the question as to which authority should for the time prevail, does not depend upon the rights of the respective parties to the property seized — whether the one was paramount to the other — but upon the question, which jurisdiction had first attached by the seizure and custody of the property under its process.”
It will be observed that in that case the rights of the plaintiff in an action of replevin, did not depend upon the seizure under' this writ, but this was merely the means of enforcing á right they claimed already to have under their mortgage: and the court proceeded to show that their right might be enforced by a different remedy in the United States court. But the principle stated is applicable here; that is, that where the conflicting rights depend alone upon the supposed lien under different process, that the one first seizing the property must prevail.
In the case of Taylor v. Carryl, 20 Howard, 594, *59 Mr. Justice Campbell, delivering the opinion of the majority of the court, quotes with approbation, and as being the correct rule, the language of Lord Ellen-borough in the case of Payne v. Drew, 4 East, as follows: “ It appears to me, therefore, not to be contradictory to any cases nor any principles of law, and to be mainly conducive to public convenience and to' the prevention of fraud and vexatious delay in these matters, to hold that where there are several authorities equally competent to bind the goods of a party, when executed by the proper officer, that they shall be considered as effectually and for all purposes bound by the authority which first actually attaches them in point of execution, and under which an execution shall have been first executed.” This case of Taylor v. Carryl had reference to conflict between the State and Federal courts. We do not deem it necessary to further review the authorities, as there seems to be no conflict. See Hagan v. Lucas, 10 Peter., 400; Brown v. Clarke, 4 Howard, 4; Peck v. Jenvess, 7 Howard, 612.
The principle is sound and of easy application. It will be observed that the supposed right, which the complainants are seeking to enforce in this case, does not depend upon any contract, or other foundation of title, but rests alone upon the supposed lien of their execution, which they claim relates to its test. The lien which they are seeking to enforce in this case, pre-supposes that the marshal had the right to seize the goods in question by virtue of the execution, notwithstanding it had been previously seized and was then held by the sheriff, under process of the State *60 court, and that the sheriff and the defendants wrongfully refused to surrender the goods, thereby depriving the marshal and the complainants of a just and legal right, which they are now seeking to enforce. But as we have seen, the sheriff having first seized the goods, it was not his duty to surrender them to the marshal, and the latter had no legal right to take them. In the language of the court in Hagan v. Lucas, “the first levy, whether made under the Federal or State authority, withdraws the property from the reach of the other,” and is not liable to be taken by another execution in the hands of another officer, and especially an officer acting under a different jurisdiction. A different doctrine would lead to a most ruinous conflict between Federal and State authority.
The Chancellor’s decree was for the Complainant., This decree will be reversed, and the bill dismissed, with costs.